# 22-11102

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**ADAM CONTRERAS,**
Defendant-Appellant

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:22-CR-43-1

## APPELLEE'S BRIEF

Leigha Simonton
United States Attorney

*/s/ Daniel Z. Gordon*
Daniel Z. Gordon
Assistant United States Attorney
D.C. Bar No. 1736506
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: (214) 659-8794
daniel.gordon@usdoj.gov

## **STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is unnecessary.  The record is short, and the appellate waiver in Contreras's plea agreement bars his claim.  But even if Contreras's claim is addressed on its merits, this Court's precedent can be easily applied to determine that the district court committed no error, much less reversible plain error, by giving Contreras the opportunity to address the court before pronouncing sentence.

# **TABLE OF CONTENTS**

                                                                    **Page**

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

TABLE OF AUTHORITIES ......................................................... iv

STATEMENT OF JURISDICTION ............................................... 1

STATEMENT OF THE ISSUE .................................................... 1

STATEMENT OF THE CASE .................................................... 1

    1.    Contreras pleads guilty based on a written plea agreement—with an appellate waiver—to possession with intent to distribute methamphetamine ..................................................... 1

    2.    The PSR details Contreras's criminal history, abusive childhood, mental health struggles, dependence on methamphetamine and marijuana, and request for drug treatment and calculates a guidelines sentence of 240 months' imprisonment ....................... 3

    3.    Contreras's counsel files objections to PSR and a 14-page memorandum in aid of sentencing and motion for a downward variance ................................................................... 4

    4.    Contreras appears for sentencing, and both he and his counsel address the court before the court imposes sentence .................... 5

SUMMARY OF THE ARGUMENT ........................................... 8

ARGUMENT AND AUTHORITIES ........................................... 9

    1.    This Court should dismiss Contreras's appeal because the appellate-rights waiver in his plea agreement bars it. .................... 9

    2.    Even if addressed on its merits, Contreras's claim fails as the district court afforded Contreras the right of allocution, so there was no error, and certainly no plain, reversible error ................ 11

        A.    The district court did not err as Contreras was afforded his right to allocute and did so by addressing the court. ........... 12

B.    Even if the district court erred, this Court need not remedy any such error under prong four of plain-error relief. .......... 14

    i.    Contreras fails to establish that the district court would have granted him a downward variance based on his proposed allocution ............................ 15

    ii.    The cases Contreras relies upon are inapposite ........ 20

CONCLUSION ........................................................................... 24

CERTIFICATE OF COMPLIANCE ......................................... 24

# TABLE OF AUTHORITIES

**Federal Cases**                                                               **Page(s)**

*Puckett v. United States*, 556 U.S. 129 (2009) ............................................11, 12

*United States v. Avila-Cortez*, 582 F.3d 602 (5th Cir. 2009) .................. 20, 22, 23

*United States v. Barnes*, 953 F.3d 383 (5th Cir. 2020).......................................10

*United States v. Chavez-Perez*, 844 F.3d 540 (5th Cir. 2016) ........................18, 19

*United States v. Echegollen-Barrueta*, 195 F.3d 786 (5th Cir. 1999)...............12, 14

*United States v. Escalante-Reyes*, 689 F.3d 415 (5th Cir. 2012) ........................ 14

*United States v. Hernandez*, 291 F.3d 313 (5th Cir. 2002) ................................ 12

*United States v. Hoctel*, 154 F.3d 506 (5th Cir. 1998) ......................................11

*United States v. Kelly*, 915 F.3d 344 (5th Cir. 2019)...........................................9

*United States v. Lajeunesse*, 85 F.4th 679 (2d Cir. 2023) ................................. 11

*United States v. Magwood*, 445 F.3d 826 (5th Cir. 2006) ..................... 15, 20, 21

*United States v. McKinney*, 406 F.3d 744 (5th Cir. 2005)................................ 10

*United States v. Palacios*, 844 F.3d 527 (5th Cir. 2016)................................... 12

*United States v. Perez-Toj*, 181 F. App'x 464 (5th Cir. 2006)............................ 15

*United States v. Reyna*, 358 F.3d 344 (5th Cir. 2004) .....................11, 14, 20, 23

*United States v. Sisco*, 576 F.3d 791 (8th Cir. 2009) ....................................... 10

*United States v. Sosa-Moreno*, 367 F. App'x 929 (10th Cir. 2010).................... 11

*United States v. Strother*, 977 F.3d 438 (5th Cir. 2020) .....................................9

*United States v. Teeter*, 257 F.3d 14 (1st Cir. 2001)........................................ 10

iv

**Federal Cases, continued** Page(s)

*United States v. Williams*, 81 F.4th 835 (8th Cir. 2023) ................................... 11

*United States v. Williams,* 258 F.3d 669 (7th Cir. 2001) ................................. 12

*United States v. Wolfe*, 71 F.3d 611 (6th Cir. 1995).......................................... 12

*United States v. Zaleta*, 458 F. App'x 369 (5th Cir. 2012)............................... 19

**Federal Statutes and Rules**

18 U.S.C. § 3231 ...................................................................................... 1

18 U.S.C. § 3742 ...................................................................................... 2

18 U.S.C. § 3742(a) .................................................................................. 1

28 U.S.C. § 1291 ...................................................................................... 2

Fed. R. App. P. 4(b) ................................................................................. 1

Fed. R. Crim. P. 32(i)(4)(A)(ii) ................................................................ 12

## STATEMENT OF JURISDICTION

This is a direct appeal from a sentence in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 18 U.S.C. § 3742(a). The district court entered judgment on November 4, 2022, (ROA.69), and Contreras timely filed the notice of appeal on November 9, 2022, (ROA.73). *See* Fed. R. App. P. 4(b).

## STATEMENT OF THE ISSUE

Did the district court commit plain, reversible error when it offered Contreras an opportunity to address the court on his behalf before rendering sentence, and Contreras responded that he did not "want to be in trouble, but [he had] asked for a competency hearing"?

## STATEMENT OF THE CASE

**1.     Contreras pleads guilty based on a written plea agreement—with an appellate waiver—to possession with intent to distribute methamphetamine.**

A grand jury indicted Contreras with a single count of possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (ROA.10.) The government then filed a superseding information charging Contreras with possession with intent to distribute 5 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (ROA.37.) Contreras entered into a written plea agreement with the

government, (ROA.240-46), and appeared before a magistrate judge to enter a guilty plea based on that agreement, (*see generally* ROA.85-156). The magistrate judge rejected the plea agreement, however, after Contreras expressed dissatisfaction with his counsel. (ROA.124-26.)

The government subsequently filed a second superseding information charging Contreras with possession with intent to distribute a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (ROA.48.) Contreras appeared again before the magistrate judge to plead guilty based on the previous written plea agreement with the government. (ROA.157-207.) This time, Contreras confirmed that he was satisfied with his counsel's representation. (ROA.187.)

At the rearraignment hearing, the magistrate judge reviewed the appellate waiver provision contained in his plea agreement and confirmed that Contreras knowingly and voluntarily waived his right to appeal consistent with the waiver. (ROA.189-90.) The appellate waiver states:

> The defendant waives the defendant's rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal the conviction, sentence, fine and order of restitution or forfeiture in an amount to be determined by the district court. The defendant further waives the defendant's right to contest the conviction, sentence, fine and order of restitution or forfeiture in any collateral proceeding,

including proceedings under 28 U.S.C. § 2241 and 28 U.S.C.
§ 2255. The defendant, however, reserves the rights (a) to bring a
direct appeal of (i) a sentence exceeding the statutory maximum
punishment, or (ii) an arithmetic error at sentencing; (b) to
challenge the voluntariness of the defendant's plea of guilty or this
waiver, and (c) to bring a claim of ineffective assistance of counsel.

(ROA.244-25.) Based on Contreras's responses to the court, the magistrate

judge recommended that the district court accept Contreras's guilty plea,

(ROA.203), which it did, (ROA.222).

**2.** **The PSR details Contreras's criminal history, abusive childhood, mental health struggles, dependence on methamphetamine and marijuana, and request for drug treatment and calculates a guidelines sentence of 240 months' imprisonment.**

In anticipation of Contreras's sentencing, the United States Probation

Office prepared a detailed PSR covering the nature of the instant offense and

Contreras's background. (ROA.248-74.) That background described

Contreras's extensive criminal history—for violent crimes and drug offenses—

including convictions for: assault bodily injury to a family member, driving

while intoxicated, felon in possession of a firearm, unlawful possession of a

firearm, possession of methamphetamine under one gram, possession of

methamphetamine under 200 grams (three separate convictions), possession of

marijuana under two ounces (two separate convictions), possession of

marijuana under five pounds (two separate convictions), possession of

marijuana under 50 pounds, and possession of marijuana under 2,000 pounds.

(ROA.256-62.)

The PSR also detailed Contreras's personal and family history. (ROA.266.) It noted that Contreras was abused by his mother "start[ing] when he was 'young' [and] occur[ing] weekly," in which Contreras was "'hit with anything.'" (ROA.266.) The PSR also described Contreras's mental health struggles, including hospitalizations for attempted suicide, once as a minor and again as an adult. (ROA.268.) Finally, the PSR detailed Contreras's history of substance abuse including his addiction to methamphetamine and marijuana and previous overdose on cocaine and methadone. (ROA.268.) As part of his interview with probation, Contreras "advised [that] he would like to participate in the Residential Drug Abuse Program while incarcerated" to help him combat his addictions. (ROA.268.)

The PSR calculated Contreras's original guidelines range as 360 months to Life imprisonment. (ROA.270.) But because the statutory maximum was 20 years' imprisonment, the PSR recommended a guideline sentence of 240 months' imprisonment. (ROA.270.) *See* USSG § 5G1.1(a).

### 3.   Contreras's counsel files objections to PSR and a 14-page memorandum in aid of sentencing and motion for a downward variance.

Also prior to sentencing, Contreras's counsel filed his objections to the PSR, (ROA.276-80), and a 14-page memorandum to aid in sentencing and to move for a downward variance ("sentencing memorandum"), (ROA.301-14). The sentencing memorandum requested a sentence of 188 months—i.e., a

downward departure or variance from the guidelines' recommended 240 months—on two bases: (1) Contreras's history and characteristics and (2) a contention that "his offense level is 4-levels higher due to the fact that he is sentenced under the methamphetamine (actual) rather that the methamphetamine (mixture) guidelines." (ROA.303-09.) As to the former basis, Contreras's counsel presented three arguments for why Contreras's history and characteristics warranted a downward variance: (1) his abusive mother raised him for the first nine years of his life, (2) Contreras attempted suicide at a very young age after his father died by suicide, and (3) as an adult, Contreras attempted to keep his family together while battling mental illness and drug addiction. (ROA.303-09.) Each argument spanned at least two pages and described in detail Contreras's abusive childhood, mental health struggles, and addiction history. (ROA.303-09.)

**4.    Contreras appears for sentencing, and both he and his counsel address the court before the court imposes sentence.**

Contreras and his counsel appeared before the district court for sentencing. (ROA.208-39.) At the beginning of the sentencing hearing, the court heard argument from Contreras's counsel concerning his objections to the PSR. (ROA.211-22.) The court overruled Contreras's objections and adopted the findings of the PSR including the advisory guidelines range of 240 months' imprisonment. (ROA.221-22.)

After determining the relevant guideline range, the court stated that it had reviewed Contreras's sentencing memorandum. (ROA.222.) Contreras's counsel then addressed the court on sentencing. (ROA.222-24.) First, she reiterated Contreras's request for a downward departure and a sentence of 188 months' incarceration. (ROA.222.) Second, she noted Contreras's difficult childhood where his mother abused him, including using "knives on him," and that his mother was "convicted of murdering her boyfriend." (ROA.222-23.) Third, defense counsel explained the toll that this abuse had on Contreras's mental health, leading to his "depression, mental illness, and numerous suicide attempts" including one when he was only eight years old. (ROA.223.) Fourth, she stated that Contreras "developed a drug addiction as a teenager" that impacted him as an adult with "his children being taken away" deepening his "depression, hopelessness, and drug use." (ROA.223.) And finally, she noted that Contreras is "desperate to overcome his addiction" and requested that he be placed in the Residential Drug Abuse Program while incarcerated. (ROA.223-24.)

The court then addressed the defendant personally:

THE COURT: Sir, do you wish to speak on your behalf? Mr. Contreras, do you wish to speak on your behalf?

THE DEFENDANT: Who? You said who?

THE COURT: I'm sorry?

THE DEFENDANT: Did you say who?

THE COURT: I said Mr. Contreras.

THE DEFENDANT: Yeah.

THE COURT: Do you wish to speak on your behalf?

THE DEFENDANT: Do I want to speak?

THE COURT: Yes.

THE DEFENDANT: Yeah.  I was trying—I don't want to be in trouble.  I was talking to [my counsel] Loui [Itoh] and I asked—but I don't want to get in trouble.  I don't want to be in trouble, but I asked for a competency hearing.

THE COURT: Okay.  Very good then.  Do you have any concerns about your client's competency?

DEFENSE COUNSEL: Your Honor, the issue of competency did come up.  I did look into it, I believe he's competent.

(ROA.224.)  The court then proceeded to sentence Contreras to a term

of 240 months' imprisonment after considering the sentencing factors set

out in Title 18, United States Code, Section 3553(a).  (ROA.225.)  After

rendering sentence, the court called on the parties to indicate any

objection to the sentence imposed.  (ROA.225-26.)  The government

indicated none, and the defense "just maintain[ed] [its] objections as

already stated" relating to the PSR guidelines calculation.  (ROA.225-

26.)  The court again denied that objection and imposed the sentence as

pronounced.  (ROA.226.)  As part of its sentence, the court

recommended Contreras's participation, if eligible, in the Residential

Drug Abuse Treatment Program.  (ROA.69-70, 226.)

## SUMMARY OF THE ARGUMENT

First, Contreras entered a written plea agreement with the government

that includes a waiver of his right to appeal from his conviction and sentence.

That appellate waiver bars Contreras's instant appeal.  His appeal should be

dismissed on that basis.

Second, even if Contreras's right to allocute claim is addressed on its

merits, the district court did not err—and certainly committed no plain,

reversible error—by addressing Contreras personally at the sentencing hearing

and allowing him the opportunity to speak before deciding his sentence.

Contreras then addressed the court before it rendered its sentence.  Because

Contreras was afforded a meaningful opportunity to allocute prior to

imposition of sentence, there was no error.

And even if the district court somehow committed plain error, this Court

need not exercise its discretion to remedy that error under the fourth prong of

plain-error review.  Indeed, this Court has declined to exercise its discretion to

correct plain error in cases involving a deprivation of the right to allocute

when, like here, the appellant provides nothing showing that the district court

might have imposed a different sentence had the defendant allocuted.

8

## ARGUMENT AND AUTHORITIES

**1.    This Court should dismiss Contreras's appeal because the appellate-rights waiver in his plea agreement bars it.**

### Standard of Review

This Court "review[s] whether an appellate waiver bars an appeal *de novo*, considering (1) whether the waiver was knowing and voluntary, and (2) whether, under the plain language of the plea agreement, the waiver applies to the circumstances at issue." *United States v. Strother*, 977 F.3d 438, 442 (5th Cir. 2020).

### Discussion

A criminal defendant may waive the statutory right to appeal in a valid plea agreement, and the government has a "strong and legitimate interest" in enforcing the terms of such agreements. *United States v. Kelly*, 915 F.3d 344, 348 (5th Cir. 2019) (quotation marks omitted). When analyzing the enforcement of an appellate-rights waiver, the Court engages in a two-step inquiry. *Id.* First, it considers whether the waiver was knowing and voluntary. *Id.* Second, it determines "whether the waiver applies . . . based on the plain language of the agreement." *Id.* (quotation marks omitted). Both prongs are satisfied here.

First, Contreras does not dispute that he entered into his appellate waiver knowingly and voluntarily, (Brief at 16), and the record rebuts any

suggestion to the contrary because, at his rearraignment hearing, Contreras testified under oath that he had voluntarily agreed to give up his appellate rights except in the limited circumstances specified in his plea agreement, (ROA.189-92).

Second, the plain language of the appellate waiver bars Contreras's claim. In his plea agreement, Contreras broadly waived his rights to appeal from his conviction and sentence, reserving only the right "(1) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of his plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel." (ROA.245.) Any infringement on the right to allocute is not covered by these exceptions. Contreras does not argue to the contrary. (*See* Brief at 16.) Instead, to get around the waiver, Contreras relies on the "miscarriage of justice" exception. (Brief at 16-17 (citing *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)).) This Court, however, has consistently refused to recognize such an exception, *see United States v. Barnes*, 953 F.3d 383, 389 (5th Cir. 2020), and Contreras presents no rational for departing from that practice now.[1] Contreras's appeal thus should be dismissed. *See, e.g., United*

---

[1] Yet, even if adopted by this Court, the "miscarriage of justice" exception is a "narrow" one that is unlikely to overcome the appellate waiver at issue. *United States v. Sisco*, 576 F.3d 791, 796 (8th Cir. 2009) (describing the "miscarriage of justice" exception as "a narrow one that may arise in only limited contexts"). Indeed, at least two other circuits that have

*States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) (dismissing an appeal

based on an appellate waiver); *United States v. Hoctel*, 154 F.3d 506, 508 (5th

Cir. 1998) (same).

**2.    Even if addressed on its merits, Contreras's claim fails as the district court afforded Contreras the right of allocution, so there was no error, and certainly no plain, reversible error.**

**<u>Standard of Review</u>**

Contreras agrees that, because he did not object to the district court's

purported failure to permit him to allocute, his claim is subject to plain error

review.  (Brief at 8 (citing *United States v. Reyna*, 358 F.3d 344, 350, 353 (5th

Cir. 2004) (en banc) (holding that, in the absence of an objection by the

defendant, errors resulting from a denial of the right of allocution are subject to

plain error review)).)  To establish plain error, the defendant must show (1) an

error; (2) that was clear or obvious; and (3) that affected his substantial rights.

*Puckett v. United States*, 556 U.S. 129, 135 (2009).  "[I]f the above three prongs

---

adopted such an exception have nevertheless dismissed allocution challenges where an appellate waiver barred such a claim.  *See, e.g.*, *United States v. Williams*, 81 F.4th 835, 841 (8th Cir. 2023) (enforcing appellate waiver for allocution challenge and declining to apply "miscarriage of justice" exception); *United States v. Sosa-Moreno*, 367 F. App'x 929, 931 (10th Cir. 2010) (same).  And notably, where a circuit court has refused to enforce an appellate waiver in an allocution challenge, it did so not based on the "miscarriage of justice" exception, but rather where the specific plea agreement's language—not present in Contreras's agreement—implicitly covered the right to allocute.  *See United States v. Lajeunesse*, 85 F.4th 679, 694-95 (2d Cir. 2023) (declining to enforce appellate waiver in allocution challenge where (1) the right to allocute is a "weighty one that is essential to the sentencing process" and (2) the plea agreement's language including, for example, that the court could consider statements made by the defendant "at sentencing when imposing sentence," implicitly covered the defendant's right to allocute).

are satisfied, the court of appeals has the *discretion* to remedy the error—
discretion which ought to be exercised only if the error seriously affects the
fairness, integrity or public reputation of judicial proceedings." *Id.* (emphasis
in the original) (quotation marks and alterations omitted). "Meeting all four
prongs is difficult, as it should be." *Id.* (quotation marks omitted).

### Discussion

### A.    The district court did not err as Contreras was afforded his right to allocute and did so by addressing the court.

A district court must afford a defendant the right of allocution "before
imposing sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). That right guarantees a
defendant a "specific and unequivocal opportunity," *United States v. Palacios*,
844 F.3d 527, 531 (5th Cir. 2016), to speak "on any subject of his choosing
prior to the imposition of sentence." *United States v. Echegollen-Barrueta*, 195
F.3d 786, 789 (5th Cir. 1999) (internal citations omitted). But even though
allocution should not be reduced to a meaningless formality, it need not be
subjected to "mechanical interpretation." *See United States v. Wolfe*, 71 F.3d
611, 614-15 (6th Cir. 1995). Indeed, Rule 32 "'does not purport to set out a
script that the district courts must follow when advising defendants of their
right to allocution. . . . Instead, the substance of what occurred is what
counts.'" *United States v. Hernandez*, 291 F.3d 313, 315-16 (5th Cir. 2002)
(quoting *United States v. Williams,* 258 F.3d 669, 674 (7th Cir. 2001)).

Here, the record is clear that the district court afforded Contreras the right to allocute prior to sentencing.  First, the court asked Contreras whether he "wished to speak on [his] behalf."  (ROA.224.)  The court left the question open ended, allowing Contreras to speak on any topic of his choosing.  (ROA.224.)  Once Contreras was aware that the court was addressing him, he affirmatively answered the court's invitation to speak on his behalf.  (ROA.224.)  Contreras then addressed the court, stating that he did not "want to be in trouble," but had asked his counsel for a competency hearing.  (ROA.224.)  The court inquired of Contreras's counsel whether she had any concerns about her client's competency, to which she responded that she had "look[ed] into it" and "believe[d] he's competent."  (ROA.224.)  The court then imposed its sentence.  (ROA.225.)  At no point did Contreras or his counsel advise the district court that he wished to say more.  And the absence of any objection corroborates that Contreras had said all he wished to say.

This procedure complies with Rule 32 as Contreras was given an opportunity to address the court on any subject prior to sentencing.  That Contreras used his allocution to raise a competency issue—rather than one pertaining to sentencing—is of no import.  And notably Contreras cites no case for the proposition that whether a defendant has been afforded the right to allocute hinges on the nature of the defendant's statement to the court.

13

Unsurprisingly so, as this would run afoul of a defendant's right to address the court on *any* subject of his choosing. *See Echegollen-Barrueta*, 195 F.3d at 789.

Because the district court unambiguously permitted Contreras the opportunity to address the court prior to sentencing—and he did so—the court complied with Rule 32 and did not commit error.

## B.    Even if the district court erred, this Court need not remedy any such error under prong four of plain-error relief.

Should this Court determine that the district court committed clear and obvious error, it must then decide whether the error affected Contreras's substantial rights. When a defendant is denied the right to allocute, this Court will presume that he suffered prejudice affecting his substantial rights when "the record reveals that the district court did not sentence at the bottom of the guideline range or if the court rejected arguments by the defendant that would have resulted in a lower sentence." *Reyna*, 358 F.3d at 353. Here, because Contreras received the term recommended by the guidelines and the court rejected his counsel's arguments for a downward variance, prejudice is presumed, implicating his substantial rights. *See id.*

A finding of error and prejudice does not end the Court's inquiry, though. *See id.*; *see also United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc) ("[W]e do not view the forth prong as automatic if the other three prongs are met."). The fourth prong of plain-error review remains

vital in cases of alleged allocution error.  Indeed, relief under prong four is only

appropriate if the defendant establishes "some objective basis that would have

moved the trial court to grant a lower sentence" if he had been permitted

allocution.  *United States v. Magwood*, 445 F.3d 826, 830 (5th Cir. 2006)

(internal citations omitted) (declining to exercise discretion to correct right to

allocution error where defendant failed to present facts or arguments that he

would have allocated on that would have warranted a lesser sentence); *see also*

*United States v. Perez-Toj*, 181 F. App'x 464, 465 (5th Cir. 2006) (same).

### i.    Contreras fails to establish that the district court would have granted him a downward variance based on his proposed allocution.

This is not a case where the Court should exercise its discretion to

remand, as Contreras presents no basis to believe the district court would have

granted him a lower sentence if he had been expressly invited to further

address the court at sentencing.  While Contreras's guidelines range was 360

months to Life, his guideline term was decreased to 240 months because of the

20-year statutory maximum.  (ROA.270.)  Thus, to succeed on prong four of

plain-error review, Contreras must show some basis that the district court

would have applied a downward variance had he further allocuted.  He fails to

do so.

Contreras contends that if permitted, he would have "addressed the

court to discuss the struggles of his childhood; his mental health struggles; and

his desire to obtain treatment to overcome his reliance on drugs to cope with his life's challenges." (Brief at 13.)  But all three of these broad categories were before the district court when it denied Contreras's request for a downward variance, as they were covered in depth in (1) the PSR, (2) defense counsel's oral presentation to the court prior to sentencing, and (3) defense counsel's 14-page sentencing memorandum submitted prior to sentencing.  Each of Contreras's proposed allocution categories is addressed in turn.

*Struggles of his childhood.*  In both her oral presentation to the court and sentencing memorandum, Contreras's counsel detailed the struggles of Contreras's childhood, explaining that he was "raised primarily by his mother who abused him and his siblings extensively," including using "knives on him." (ROA.222-23 (sentencing transcript)); (*see also* ROA.302-04 (sentencing memorandum)).)  His counsel also noted that while Contreras was in high school, his mother was "convicted of murdering her boyfriend." (ROA.223 (sentencing transcript)); (*see also* ROA.302 (sentencing memorandum)).)  The PSR expanded on Contreras's struggles as a child, noting that "his father received custody of him and his siblings due to their mother physically abusing them and their father." (ROA.266.)  And it noted that the "abuse started when [Contreras] was 'young,' occurred weekly, and . . . he was 'hit with anything.'" (ROA.266.)  Defense counsel's sentencing memorandum also mentioned that

16

the abuse included Contreras's uncle molesting him when he was a teenager. (ROA.307.)

*Mental health struggles.* Prior to sentencing, Contreras's counsel described Contreras's struggles with mental illness including his battle with depression and "numerous suicide attempts," the first of which, "at the age of eight years old, emulat[ed] his father's attempt to take his own life." (ROA.223 (sentencing transcript)); (*see also* ROA.302, 305-07 (sentencing memorandum)).) According to the PSR, following that first suicide attempt, Contreras "attended counseling two times per week, for 'several months,' and was placed on an unknown medication of which his father took him off because he was not 'acting like [himself].'" (ROA.268.) Contreras's counsel also told the court that Contreras's attempt to self-medicate led to his "drug addiction as a teenager, that . . . plagued him as a young parent as it resulted in his children being taken away" and deepened his "depression, hopelessness, and drug use." (ROA.223.) The PSR also indicated that in 2008, Contreras was hospitalized for another suicide attempt in which "he overdosed on cocaine and methadone," but was not diagnosed with a mental health illness following an assessment. (ROA.268 (PSR)); (*see also* ROA.307 (sentencing memorandum)).)

17

***Desire to receive treatment.***  Finally, the PSR extensively described

Contreras's history of substance abuse.  (*See* ROA.268.)  In the sentencing

memorandum, Contreras's counsel noted that Contreras developed a drug

addiction as a teenager to "cope with his pain and loneliness."  (ROA.302.)

Contreras's counsel told the court that Contreras was "desperate" to overcome

his addiction, (ROA.224 (sentencing transcript)), and requested his placement

in the "intensive 500-hour Residential Drug Abuse Program" so that he could

receive appropriate treatment "as soon as possible," (ROA.309 (sentencing

memorandum)).  (*See also* ROA.314 (sentencing memorandum) ("He is eager

to address his drug addiction.").)

After considering these arguments along with the Section 3553(a)

factors, the district court rejected Contreras's request for a downward variance

and sentenced him to 240 months' imprisonment.  (ROA.222-25.)  Contreras

presents no argument that his proposed allocution topics would have provided

the court with anything *different* than what was contained in the PSR *or*

presented orally by his counsel at the sentencing *or* detailed in his counsel's 14-

page sentencing memorandum, such that it could have resulted in the district

court granting his request for a downward variance.

Indeed, this case is nearly identical to *United States v. Chavez-Perez*, 844

F.3d 540 (5th Cir. 2016), where this Court declined to exercise its discretion to

remand for resentencing under prong four—despite finding that the district court erred in failing to permit the defendant the right to allocute—because (1) the defendant, while referencing three "general topics" in his appellate brief that he would have allocuted on,[2] offered "no specific facts or additional details that he would have elaborated on," (2) "[m]ost of the arguments Chavez-Perez claims he would have made were raised either by him or defense counsel at the sentencing hearing," and (3) "Chavez-Perez does not provide any new mitigating information in his appellate brief." *Id.* at 545. So too here, "because the district court had before it the mitigating information [Contreras] claims he would have provided if given the chance to allocute, and the court calculated his sentence having considered that information, [this Court] [should not] say that a miscarriage of justice occurred." *Id.*; *see also United States v. Zaleta*, 458 F. App'x 369, 373 (5th Cir. 2012) (declining to correct the error where "all of the issues on which Zaleta claims he would have expounded were addressed by defense counsel"). Accordingly, this Court's intervention under prong four is unwarranted.

---

[2] The topics included: "(1) his family situation and the resultant pressure he felt to return to the United States; (2) the difficulties, 'and perhaps even dangers,' he faced in Mexico; and (3) how his substance abuse 'contributed to his criminal history, especially [his] assaultive offenses' and 'any efforts on his part ... to try to stay 'clean' and to manage his anger.'" *Chavez-Perez*, 844 F.3d at 545.

### ii.    The cases Contreras relies upon are inapposite.

Contreras references three cases to argue that a remand is warranted.

(*See* Brief at 12-16 (citing *Reyna*, *Magwood*, and *United States v. Avila-Cortez*, 582 F.3d 602 (5th Cir. 2009)).)  But Contreras's argument misses the forest for the trees.  Indeed, all three cases stand for the straightforward proposition that the Court must "conduct a thorough review of the record" in *this* case to determine whether Contreras has presented sufficient evidence that may have mitigated his sentence.  *Reyna*, 358 F.3d at 353; *see also Magwood*, 445 F.3d at 830 ("Therefore, defendants have to show some objective basis that would have moved the trial court to grant a lower sentence; otherwise, it can hardly be said that a miscarriage of justice has occurred." (internal quotations omitted)); *Avila-Cortez*, 582 F.3d at 606 ("[I]f the defendant had a prior opportunity to allocute, or if the defendant fails to explain what exactly he or she would have said during allocution that might mitigate the sentence, then the case is one of those limited class of cases in which we will decline to exercise our discretion to correct the error." (internal quotations omitted)).  And none counsel in favor of fourth prong relief, which this Court has noted is a "highly fact-specific inquiry."  *Avila-Cortez*, 582 F.3d at 605.

Take *Magwood*.  There, this Court held that while the district court afforded the defendant the opportunity to speak at his revocation hearing, the district court erred by not "'unequivocally' communicat[ing] to Magwood that

he had the right to allocate to mitigating circumstances before he was sentenced." *Magwood*, 445 F.3d at 829. This Court, nevertheless, opted not to exercise its discretion to remand for resentencing because it found that the district court considered arguments in mitigation presented by Magwood's counsel and Magwood failed to "furnish any information about what he would have allocuted to that might have mitigated his sentence." *Id.* at 830. So too here, while the government maintains that Contreras was given the opportunity to allocute—even if this Court disagrees—Contreras was certainly given the opportunity to address the court at his sentencing, and he did so. (*See* ROA.224-25.) And while unlike in *Magwood*, Contreras presents this Court with three broad categories that he would have allocuted on, he fails to show "some objective basis that would have moved the trial court to grant a lower sentence" based on those arguments that were already thoroughly covered—and therefore before the district court—in the PSR, his counsel's statement to the court, and his counsel's 14-page sentencing memorandum. *Magwood*, 445 F.3d at 830.

Contreras next relies on *Avila-Cortez*—where the court remanded for resentencing following a right to allocution error—emphasizing that like his case, Avila-Cortez appeared before the court for the first time and the court made no reference to the mitigation arguments before rendering its sentence.

(Brief at 15-16 (citing *Avila-Cortez*, 582 F.3d at 606-07).)  But *Avila-Cortez* is readily distinguishable from the record here.  Unlike in *Avila-Cortez* where the district court "did not address Avila-Cortez personally" at the sentencing hearing and sentenced him without *ever* asking if he wanted to speak on his behalf, here Contreras was given the opportunity to address the court, and did so before the court rendered its sentence.  *Compare* (ROA.224-25 (Contreras addressing the court prior to sentencing)), *with Avila-Cortez*, 582 F.3d at 604 (sentencing the defendant without ever permitting him to address the court).  Indeed, in describing its rationale for granting plain-error relief, this Court in *Avila-Cortez* emphasized the district court's failure to permit the defendant *any* opportunity to speak.  *See Avila-Cortez*, 582 F.3d at 607 ("Avila-Cortez himself must be given the opportunity to address the court.").  Moreover, while defense counsel in *Avila-Cortez* "*summarily* referred to . . . mitigating evidence in his argument" at sentencing, *id.* at 606 (emphasis added), here Contreras's counsel provided *specific* evidence as to each mitigation ground in her oral argument before the court and the 14-page memorandum submitted in anticipation of sentencing.  (*See supra* Section 2.B.i.)

Finally, while Contreras aptly notes the different posture of *Reyna*—which dealt with a defendant appearing for his third time before the court that had previously warned him about his new sentence if he violated his

conditions of supervision, (Brief at 13-14 (citing *Reyna*, 358 F.3d at 352-53))—
he fails to establish how that *different* record should guide this Court's "highly
fact-specific inquiry" here. *Avila-Cortez*, 582 F.3d at 605. And notably, the
Court in *Reyna* does not provide a broad rule about when fourth prong
intervention is appropriate under plain-error review, and rather noted
intervention was unwarranted based "[o]n the particular facts of th[at] case."
*Reyna*, 358 F.3d at 353. Thus, *Reyna* supports, rather undermines, the
government's position that the record here should be closely analyzed leading
to the conclusion that fourth prong intervention is unwarranted.

Because any purported allocution error did not seriously affect the
fairness, integrity, or public reputation of judicial proceedings, the judgment
should be affirmed.

## CONCLUSION

This Court should affirm the judgment.

Respectfully submitted,

Leigha Simonton
United States Attorney

*/s/ Daniel Z. Gordon*
Daniel Z. Gordon
Assistant United States Attorney
D.C. Bar No. 1736506
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: (214) 659-8794
daniel.gordon@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,175 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*/s/ Daniel Z. Gordon*
Daniel Z. Gordon